UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

PATRICIA W.,[1]

                          Plaintiff,

           -against-

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------------------------X

**REPORT AND RECCOMENDATION**

25 Civ. 2301 (KMK) (AEK)

**TO:  THE HONORABLE KENNETH M. KARAS, U.S.D.J.**

Plaintiff Patricia W. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner"), which denied her application for supplemental security income ("SSI") benefits. *See* ECF No. 1.  Plaintiff filed a brief in support of her appeal, ECF No. 12 ("Pl.'s Mem."), the Commissioner filed a brief in response, ECF No. 16 ("Def.'s Mem."), and Plaintiff filed a reply brief, ECF No. 17.[2]  For the reasons that follow, I respectfully recommend that Plaintiff's motion (ECF No. 11) be GRANTED, that judgment be entered in favor of Plaintiff, and that the case be remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g), and not solely for the calculation of benefits.

---

[1] To preserve her privacy, Plaintiff is referred to by her first name and the first initial of her last name.

[2] While Plaintiff labeled her initial filing as a "motion for judgment on the pleadings" pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties' submissions in this matter are governed by Rules 6, 7, and 8 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which refer to the filings simply as a Plaintiff's brief, a Commissioner's brief, and a reply brief.

**BACKGROUND**

I.    **Procedural Background**

On September 30, 2015, Plaintiff filed an application for SSI benefits, alleging September 18, 2015 as the onset date of her disability.  AR 187, 1358.[3]  The Social Security Administration ('SSA") denied Plaintiff's claim on November 25, 2015, AR 188-98, 229-34, and on January 19, 2016, she requested a hearing before an Administrative Law Judge ("ALJ"), AR 237.  A hearing was held on January 19, 2018 before ALJ Lori Romeo.  AR 176-86.  At the hearing, Plaintiff, upon the advice of prior counsel, asked to withdraw her request for a hearing. AR 179, 184; *see also* AR 290, 293-94.  ALJ Romeo issued a formal order of dismissal on January 30, 2018, which stated that the initial determination from November 25, 2015 remained in effect.  AR 202.  On February 21, 2018, Plaintiff requested that the SSA's Appeals Council review the order of dismissal.  AR 298.  In an order dated September 21, 2018, the Appeals Council granted the request for review, vacated the order of dismissal, and remanded the case for further proceedings, finding that the record from the January 19, 2018 hearing indicated that Plaintiff did not understand the effects of withdrawing the request for a hearing, and that Plaintiff was not fully advised of the consequences of the withdrawal.  AR 203-05.

A second hearing was held before ALJ James Kearns on September 18, 2019, AR 159-75, and on October 7, 2019, ALJ Kearns issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") since September 30, 2015, the date on

---

[3] Citations to "AR" refer to the certified copy of the administrative record filed by the Commissioner.  ECF No. 8.

which she filed her application for SSI, AR 209-17.[4]  On December 4, 2019, Plaintiff requested that the Appeals Council review this decision, AR 373, and on October 14, 2020, the Appeals Council vacated the decision and remanded the matter for resolution of multiple specific issues, AR 225-27.  On remand, a third hearing was held, again before ALJ Kearns, AR 139-58, and in a decision dated July 7, 2021, ALJ Kearns issued a decision finding that Plaintiff was not disabled since September 30, 2015, AR 12-24.  Plaintiff requested that the Appeals Council review this decision, AR 375-76, but the Appeals Council denied review on September 2, 2022, AR 1-6.

On October 14, 2022, Plaintiff filed a complaint in this District to challenge the July 7, 2021 denial of benefits.  AR 1415-17; S.D.N.Y. Dkt. No. 22-cv-8760.  The parties subsequently agreed to remand the case for further administrative proceedings—the Court endorsed the parties' stipulation on October 17, 2023, and judgment was entered that same day.  *See* S.D.N.Y. Dkt. No. 22-cv-8760, ECF Nos. 25, 26.  On December 4, 2023, the Appeals Council issued an order remanding the case to an ALJ for resolution of various issues.  AR 1436-37.

A fourth hearing was held, this time before ALJ Flor Suarez, on October 8, 2024.  AR 1381-1412.  On January 17, 2025, ALJ Suarez issued a decision finding that Plaintiff was not disabled since September 30, 2015.  AR 1358-72.  Plaintiff did not seek review of the January 17, 2025 decision by the Appeals Council; accordingly, ALJ Suarez's decision became the final decision of the Commissioner.  The instant lawsuit, seeking judicial review of ALJ Suarez's decision, was filed on March 20, 2025.  ECF No. 1.

---

[4] Even though Plaintiff alleged September 18, 2015 as the onset date of her disability, SSI benefits are not payable "for any period that precedes the first month following the date on which an application is filed[.]"  20 C.F.R. § 416.501.  Accordingly, the ALJ decisions in this matter appropriately focus on the date Plaintiff applied for benefits.

## II.    Testimonial, Medical, and Vocational Evidence

Both parties have provided summaries of the testimonial, medical, non-medical, and vocational evidence contained in the administrative record.  *See* Pl.'s Mem. at 2-15; Def.'s Mem. at 1-13.  Based on an independent and thorough examination of the record, the Court finds that the parties' summaries of the evidence are largely comprehensive and accurate.  Accordingly, the Court adopts these summaries and discusses the evidence in the record in more detail to the extent necessary to a determination of the issues raised in this case.  *See, e.g., Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## APPLICABLE LEGAL PRINCIPLES

## I.    Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when deciding that the plaintiff was not disabled.  *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "'Failure to apply the correct legal standards is grounds for reversal.'"  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must evaluate whether the Commissioner's decision was supported by substantial evidence.  *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 106 (cleaned up).  The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing court "to determine *de novo* whether a plaintiff is disabled."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (cleaned

up).  To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (cleaned up).  "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (cleaned up) (emphasis in original).  "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'"  *Id.* (quoting *McIntyre v. Colvin*, 758 F3d 146, 149 (2d Cir. 2014)).

## II.    Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.*

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow in determining whether a particular claimant is disabled.  *See* 20 C.F.R. § 416.920(a)(4).  The Commissioner first considers whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i), (b).  If the claimant is engaged in substantial gainful activity, then the Commissioner will find that the claimant is not disabled; if the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to the second step, at

which the Commissioner considers the medical severity of the claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  If the claimant suffers from any severe impairment, the Commissioner at step three must decide if the impairment meets or equals a listed impairment; listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the SSA regulations.  20 C.F.R § 416.920(a)(4)(iii), (d).

If the claimant's impairments do not satisfy the criteria of a listed impairment at step three, the Commissioner must then determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  A claimant's RFC represents "the most [he or she] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a)(1).  After determining the claimant's RFC, the Commissioner proceeds to the fourth step to determine whether the claimant can perform his or her past relevant work.  20 C.F.R. § 416.920(a)(4)(iv), (e)-(f).  If it is found that the claimant cannot perform his or her past relevant work, the Commissioner proceeds to step five to consider the claimant's RFC, age, education, and work experience to determine whether he or she can adjust to other work.  20 C.F.R. § 416.920(a)(4)(v), (g).  To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, in light of his or her RFC and vocational factors, is capable of performing.  20 C.F.R. § 416.960(c).

The claimant bears the burden of proof on the first four steps of this analysis.  *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998).  If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he or she need not proceed with the remaining steps.

*Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of performing other work.  *DeChirico*, 134 F.3d at 1180.

## DISCUSSION

Plaintiff seeks to reverse the Commissioner's decision and have the matter remanded solely for the calculation of benefits or, alternatively, for further administrative proceedings. Pl.'s Mem. at 27.  She contends that the ALJ improperly evaluated the medical opinion evidence and failed to properly apply the treating physician rule with respect to Plaintiff's physical limitations.  *Id.* at 15-21.  Plaintiff also asserts that the ALJ incorrectly assessed Plaintiff's RFC for her mental impairments, *id.* at 21-25, and did not properly evaluate Plaintiff's subjective statements, *id.* at 25-27.  The Commissioner seeks to have the agency's final decision affirmed, and maintains that the ALJ's decision is based upon the application of correct legal standards and is supported by substantial evidence.  *See* Def.'s Mem at 1, 15-27.

## I.    The ALJ's Decision

ALJ Suarez applied the five-step sequential analysis described above and issued a decision finding that Plaintiff was not disabled from September 30, 2015, the date she filed her application for SSI benefits.  AR 1355-80.  First, while the ALJ found that Plaintiff had engaged in substantial gainful activity during 2019 and 2020, she also concluded that there have been continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity, and thus there were periods when Plaintiff potentially remained eligible for benefits. AR 1360-61.  Second, ALJ Suarez determined that Plaintiff had the severe impairments of "bipolar disorder, affective disorder, osteoarthritis, left knee meniscus tear status post-surgery, and obesity."  AR 1361.  Third, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of any of the impairments

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 1362.

According to the ALJ, Plaintiff retained the RFC to perform a reduced range of light

work,[5] subject to the following additional restrictions:

> She can lift/carry and push/pull 20 pounds occasionally and 10 pounds
> frequently.  During an eight-hour workday, she can sit for six hours and
> stand/walk for six hours.  She is limited to occasional exposure to extreme
> heat, cold, wetness, humidity, and bronchial irritants such as noxious
> fumes, odors, dust, gases, and poorly ventilated areas.  She is limited to
> simple and routine tasks consistent with [Specific Vocational Profile] 1
> and 2.  She can have occasional interaction with supervisors, coworkers,
> and the public.  She cannot perform work requiring a specific production
> rate, meaning no assembly line type work.

AR 1364-65.

In determining Plaintiff's RFC, the ALJ evaluated Plaintiff's symptoms by applying the

two-step framework described in 20 C.F.R. § 416.929 and SSR 16-3p,[6] concluding first that

Plaintiff's "medically determinable impairments could reasonably be expected to cause some of

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

[6] The ALJ specified that the first step in this process is to determine "whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms."  AR 1365.  Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, [the ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities," and "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." *Id.*

8

the alleged symptoms," but second that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 1365-66. The ALJ provided a summary of the evidence in the record, including Plaintiff's statements about her symptoms and activities of daily living, as well as the medical treatment records. AR 1365-67.

ALJ Suarez also considered the opinion evidence in accordance with 20 C.F.R. § 416.927. AR 1366-69. With respect to Plaintiff's physical impairments, the record included an opinion from Plaintiff's treating physician, Dr. Valsa S. Madhava, and opinions from four consultative examinations—one by Dr. Sharon Revan, in November 2015, two by Dr. Ram Ravi, in November 2017 and March 2024, and one by Dr. Vinod Thukral, in November 2018.

ALJ Suarez gave "limited weight to the assessment of Dr. Revan and to the November 2017 opinion of Dr. Ravi because of the vague terms included, particularly 'mild' and 'moderate', which do not comport to the [SSA's] [RFC] terminology regarding the specific degree to which the claimant could perform particular activities during a typical 8-hour workday." AR 1367. But the ALJ gave "substantial weight" to "the parts of Dr. Ravi's November 2017 opinion that provide specific limitations, as well as the assessment of Dr. Thukral and the March 2024 opinion of Dr. Ravi . . . to the extent that they identify exertional restrictions consistent with light physical exertion, which requires lifting/carrying 20 pounds occasionally, lifting/carrying 10 pounds frequently, standing/walking for six hours during an eight-hour workday, and sitting for six hours during an eight-hour workday." AR 1367. ALJ Suarez determined that "[t]hese exertional limitations are consistent with the overall record." AR 1367. The ALJ also gave "substantial weight" to "[t]he environmental restrictions identified

9

by Dr. Ravi and Dr. Thukral" because "they are consistent with the claimant's reports of ongoing pain, her history of left knee surgery, and her non-severe asthma."  AR 1367.

The ALJ gave "limited weight" to the "foot control limitations identified by Dr. Ravi in November 2017 and the postural limitations identified by Dr. Ravi in March 2024."  AR 1367. According to the ALJ, even after Plaintiff underwent knee surgery in October 2015, her subsequent examinations were generally unremarkable, and gait abnormalities and lower extremity range of motion loss identified by Dr. Ravi in November 2017 were not found in the assessments of Dr. Thukral in November 2018 and Dr. Ravi in March 2024.  AR 1367.  In addition, the ALJ gave "little weight" to "the reaching and manipulative limitations identified by Dr. Ravi in November 2017 and March 2024"; ALJ Suarez determined that such limitations were "not supported by examinations documented in progress notes, which do not reflect upper extremity abnormalities," and that Dr. Ravi's November 2017 identification of shoulder range of motion loss were "inconsistent with the remaining examinations of record."  AR 1367.  The ALJ also accorded "little wight" to the hazard limitations identified by Dr. Ravi as the "physical examinations documented in progress notes were unremarkable and do not support hazard restrictions."  AR 1367-68.

Even though Dr. Madhava provided the only treating physician opinion regarding Plaintiff's physical limitations, ALJ Suarez accorded "little weight" to her opinion.  AR 1368. While ALJ acknowledged that Dr. Madhava had knowledge of Plaintiff's longitudinal medical history, she nevertheless concluded that Dr. Madhava "overstates [Plaintiff's] sitting and standing / walking limitations, as well as her need for off-task time."  AR 1368.  Specifically, ALJ Suarez explained that the physical examinations documented in progress notes were "generally unremarkable and do not include musculoskeletal / neurological findings that would

10

support sitting or standing / walking limitations." AR 1368. Despite Plaintiff's testimony about needing to be able to elevate her leg and lay down during the day, ALJ Suarez concluded that "her level of treatment is inconsistent with a need for off-task time or excessive absences." AR 1368. Furthermore, ALJ Suarez found that her treatment following her October 2015 knee surgery "was limited to conservative measures that included follow-up care and medication management." AR 1368.

In evaluating Plaintiff's mental impairments of bipolar disorder and affective disorder, ALJ Suarez considered an opinion offered by Dr. Madhava, an assessment from the state agency medical consultant, Dr. Shapiro, who first reviewed Plaintiff's file in November 2015, and opinions from four psychiatric consultative examinations—one by Lucy Kim, Psy.D., in November 2015, one by Haruyo Fujiwaki, Ph.D., in November 2017, one by Erica King-Toler, Ph.D., in November 2018, and one by Jessica Forsyth, Ph.D., in March 2024. AR 1368-69.

The ALJ gave "little weight" to the assessments of Dr. Madhava and Dr. Shapiro, because they "understate [Plaintiff's] work-related mental restrictions." AR 1369. ALJ Suarez accorded "more weight" to the opinions of Dr. Kim, Dr. Fujiwaki, Dr. King-Toler, and Dr. Forsyth, but only to the extent that they "highlight moderate work-related mental restrictions." AR 1369. The ALJ accorded "little weight" to the "moderate-to-marked and marked limitations identified by Dr. Fujiwaki, Dr. King-Toler, and Dr. Forsyth" because, in ALJ Suarez's view, those opinions overstate Plaintiff's limitations in these areas of functioning. AR 1369. The ALJ concluded that Plaintiff has "moderate work-related mental restrictions" due to her alleged symptoms and their persistence despite treatment, but determined that "further limitations are inconsistent with [Plaintiff's] conservative level of care, which included therapy and medication management but not psychiatric hospitalization or emergency care." AR 1369. In addition, the

11

ALJ found that despite Plaintiff's reported symptoms and the moderate cognitive defects noted by Dr. King-Toler, "mental status examinations documented in progress notes do not reflect cognitive or behavioral deficits beyond anxious/depressed mood with flat affect at times," and mild deficits in memory and attention. AR 1369.

At the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work as a companion. AR 1370.

At the fifth step, the ALJ noted that if Plaintiff had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. AR 1371. But the ALJ concluded that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." AR 1371. Thus, "[t]o determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]." AR 1371. The vocational expert determined and testified that Plaintiff could perform the requirements of representative unskilled occupations such as (1) marker (167,105 jobs nationally); (2) mail clerk (12,575 jobs nationally); (3) bottle packager (7,111 jobs nationally); and (4) routing clerk (122,280 jobs nationally). AR 1371. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 1371. For all these reasons, the ALJ determined that Plaintiff was not disabled since September 30, 2015. AR 1371.

## II.    The ALJ's Evaluation of Plaintiff's Physical Impairments

According to Plaintiff, ALJ Suarez committed legal error by not giving controlling weight to the opinion from Dr. Madhava, Plaintiff's treating physician, regarding her physical

12

limitations.  Specifically, Plaintiff contends that Dr. Madhava's opinion is well supported and

consistent with physical examinations and objective test results, and that it was improper to give

greater weight to opinion evidence supplied by consultative examiners.  Pl.'s Mem. at 17-20.

The Commissioner counters that ALJ Suarez was correct to discount Dr. Madhava's opinion, and

that she provided good reasons for doing so.  *See* Def.'s Mem. at 20-22.

### A.    Legal Standard for Application of the Treating Physician Rule

As a general matter, an ALJ is directed to consider "every medical opinion" in the record,

regardless of its source.  20 C.F.R. § 416.927(c).  Yet not every medical opinion is assigned the

same weight.  "Under the treating physician rule, an ALJ must give 'controlling weight' to the

opinion of a claimant's treating physician, so long as it is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the case record.'"  *Castorina v. Kijakazi*, No. 21-100-cv, 2023 WL

4229250, at *1 (2d Cir. June 28, 2023) (summary order) (quoting *Burgess v. Astrue*, 537 F.3d

117, 128 (2d Cir. 2008) (cleaned up)).[7]  "If the treating physician's opinion is not well-supported

or is contradicted by substantial evidence, then the ALJ must articulate good reasons to rebut the

presumption of controlling deference conferred on the treating physician's opinion."  *Id.* (quoting

*Colgan v. Kijakazi*, 22 F.4th 353, 360 (2d Cir. 2022) (quotation marks omitted)).  "The ALJ must

then determine how much weight, if any, to give the treating physician's opinion."  *Id.* (citing

*Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019)).  "In doing so, [the ALJ] must explicitly

consider the following, nonexclusive *Burgess* factors: (1) the frequency, length, nature, and

---

[7] The Social Security regulations were amended for claims filed after March 27, 2017. Because Plaintiff filed her application for SSI benefits on September 30, 2015, citations to SSA regulations in this section are to the earlier version of the "treating physician rule," which applies in this matter.

extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (cleaned up); *see* 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(c)(6).

The ALJ need not provide a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order); *see also Winder v. Berryhill*, 369 F. Supp. 3d 450, 458 (E.D.N.Y. 2019) ("An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule and provided good reasons for the weight [he or] she gives to the treating source's opinion." (cleaned up)); *Martinez-Paulino v. Astrue*, No. 11-cv-5485 (RPP), 2012 WL 3564140, at * 16 (S.D.N.Y. Aug. 20, 2012) ("It is not necessary that the ALJ recite each factor explicitly, only that the decision reflects application of the substance of the rule."). Nonetheless, the Commissioner must "always give good reasons in [his or her] notice of determination or decision for the weight [he or she] give[s] [a claimant's] treating source's medical opinion," 20 C.F.R. § 416.927(c)(2); *see Colgan*, 22 F.4th at 360, and must "comprehensively set forth reasons for the weight" ultimately assigned to the opinion of the treating source, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see Burgess*, 537 F.3d at 129-30.

"An ALJ's failure to explicitly apply the *Burgess* factors when assigning weight is a procedural error. If, however, a searching review of the record assures [the court] that the

substance of the treating physician rule was not traversed, [the court] will affirm." *Castorina*,

2023 WL 4229250, at *1 (cleaned up) (quoting *Estrella*, 925 F.3d at 96).

**B.    The ALJ's Application of the Treating Physician Rule**

In a physical assessment questionnaire completed on January 3, 2018, Dr. Madhava

indicated that Plaintiff would be limited to sitting for four hours and standing / walking for four

hours during an eight-hour workday; would need to take unscheduled breaks during a workday

(though without specifying how many breaks or how long they would be); would be able to lift /

carry 10 pounds only occasionally; and would require three or four absences from work each

month as a result of her impairments.[8] AR 1083-84.  Despite acknowledging Dr. Madhava's

role as Plaintiff's treating physician and her familiarity with Plaintiff's longitudinal medical

history, ALJ Suarez declined to give controlling weight to the opinion because, in her view, it

overstated Plaintiff's sitting, standing, and walking limitations, as well as the need for off-task

time and excessive absences.  AR 1368.

In discounting Dr. Madhava's opinion, ALJ Suarez highlighted Plaintiff's "generally

unremarkable" physical examinations that "do not include musculoskeletal/neurological findings

that would support sitting or standing/walking limitations"; a level of treatment that is

"inconsistent with a need for off-task time or excessive absences"; and treatment following

Plaintiff's knee surgery that "was limited to conservative measures that included follow-up care

and medication management." AR 1368.  As explained below, ALJ Suarez did not err in

declining to give "controlling weight" to Dr. Madhava's opinion in light of her findings that the

restrictions assessed by Dr. Madhava were not supported by, and were inconsistent with, the

---

[8] Dr. Madhava's conclusions on this assessment are based entirely on her opinions
regarding Plaintiff's physical limitations.

15

treatment records of Plaintiff's other care providers and the opinions from multiple consultative examinations performed over a period of years.

### a.    Treatment Records

First, Plaintiff's treatment records do not support Dr. Madhava's conclusions regarding her physical limitations.  In particular, Plaintiff's medical records do not include musculoskeletal or neurological findings that would support the types of limitations recommended by Dr. Madhava.  Following Plaintiff's recovery from her October 2015 left knee surgery, examinations from medical visits for various purposes did not include reports or findings of range of motion loss, deficits in extremity strength or sensation, abnormal gait, or evidence of use of an assistive device.  AR 1366; *see, e.g.,* AR 1129-32 (Jan. 10, 2019 visit); 1133-37 (Dec. 27, 2018 visit); 1138-40 (Dec. 14, 2018 visit); 1141-43 (Aug. 23, 2018 visit—"normal gait"); 1147-51 (Apr. 30, 2018 visit); 1156-58 (Jan. 30, 2018 visit); 1217-19 (Mar. 1, 2021 visit—Plaintiff reports "able to walk normally" and "able to move all extremities without weakness"); 1221-24 (Nov. 30, 2020 visit); 1226-28 (Oct. 5, 2020 visit); 1230-31 (July 23, 2020 visit—Plaintiff reports "able to walk normally" and "able to move all extremities without weakness"); 1237-38 (Apr. 24, 2020 visit— Plaintiff reports "able to walk normally" and "able to move all extremities without weakness"); 1239-41 (Apr. 14, 2020 visit—Plaintiff reports "able to walk normally" and "able to move all extremities without weakness"); 1252-54 (Jan. 10, 2020 visit); 1255-57 (Dec. 17, 2019 visit— "strength and [range of motion] of extremities grossly intact, ambulatory); 1271-73 (Aug. 16, 2019 visit); 1277-78 (June 20, 2019 visit); 1282-83 (May 23, 2019 visit); 1644-47 (Aug. 26, 2022 visit—"normal range of motion"); 1700-02 (July 18, 2022 visit—"negative for joint pain and myalgias"; "gait normal"); 1748-49 (June 20, 2022 visit—"gait normal"); 1772-73 (June 13, 2022 visit—"gait normal"); 1851 (Dec. 12, 2022 visit); 1872-74 (Dec. 1, 2022 visit—Plaintiff

16

reports "able to walk normally" and "able to move all extremities without weakness"); 1957 (Oct. 7, 2022 visit—"normal range of motion"); 2038-40 (June 12, 2023 visit); 2081-83 (Apr. 7, 2023 visit); *see also* AR 1932 (Nov. 4, 2022 visit—prior to recent reports of shortness of breath, Plaintiff reported she could walk "all the way to the Bronx").

A treating physician's opinion may be discounted where, as here, it is inconsistent with treatment records from other providers. *See Micheli v. Astrue*, 501 F. App'x 26, 28-29 (2d Cir. 2012) (summary order) (upholding ALJ's decision not to assign controlling weight to treating physician's opinion based in part on contradictory findings by other treating physicians); *see also Bailey v. Berryhill*, No. 18-cv-00013 (WIG), 2019 WL 427320, at *5 (D. Conn. Feb. 4, 2019) (finding "no error with the ALJ's decision to give little weight" to the treating physician's opinion where, among other things, it was "inconsistent with records from other treatment providers"). Accordingly, ALJ Suarez did not err in discounting Dr. Madhava's opinion, in part because it was neither supported by, nor consistent with, the treatment records of Plaintiff's other providers.

### b. Consultative Examinations

As ALJ Suarez addressed through her detailed discussion of the opinions of the consultative examiners who opined on Plaintiff's physical condition, Dr. Madhava's opinion also was inconsistent with the portions of the consultative examinations to which ALJ Suarez accorded the most weight—specifically, the parts of Dr. Ravi's November 2017 opinion that provide specific limitations, as well as the November 2018 assessment of Dr. Thukral and the March 2024 opinion from Dr. Ravi.[9]

---

[9] Notably, Dr. Revan's consultative examination on November 7, 2015 was performed less than three weeks after Plaintiff's October 21, 2015 knee surgery. *See* AR 1009 (operative report); 1000-03 (Revan consultative examination report).

In Dr. Ravi's 2017 examination of Plaintiff, he observed some gait abnormality and range of motion limitations, but ultimately concluded that Plaintiff would still be able to lift and carry up to 20 pounds occasionally, and would be able to sit and stand for six hours without interruption—and eight hours in all—during a workday, though she would only be able to walk for four hours.  AR 1061-70.  As ALJ Suarez explained, these limitations—which are less restrictive than those suggested by Dr. Madhava—would still enable Plaintiff to perform light physical work.  *See* AR 1367.

The exertional limitations identified during subsequent consultative examinations were even less restrictive.  In his November 2018 examination of Plaintiff, Dr. Thukral determined that Plaintiff had a normal gait, full flexion, extension, and lateral flexion of both her cervical and lumbar spine, and full range of motion of her shoulders, elbows, forearms, wrists, hips, knees, and ankles.  AR 1103-04.  On the basis of his examination, Dr. Thukral concluded that Plaintiff had "no limitations for sitting, standing, bending, pulling, pushing, lifting, carrying, or any other such related activities."  AR 1104; *see also* AR 1106-08 (opining that Plaintiff could sit, stand, and walk without interruption for an entire eight-hour workday).

Dr. Ravi's findings in his March 2024 examination were similar to those of Dr. Thukral.  He concluded, based on his examination, that Plaintiff had a normal gait, that her range of motion in her cervical and lumbar spine, shoulders, elbows, wrists, knees, hips, and ankles was within normal limits, and that she had no limitations in her ability to sit, stand, bend, push, pull, lift, and carry.  AR 2402-03.  In addition, Dr. Ravi's assessment was that Plaintiff could sit, stand, and walk for six hours without interruption during the work day, and would be able to sit, stand, and walk for a total of eight hours per day.  AR 2406.

18

The exertional limitations set forth in these consultative examinations are consistent with the overall record, which generally documents that Plaintiff, after her recovery from the October 2015 knee surgery, did not exhibit gait issues, musculoskeletal abnormalities, or deficits that would support the standing / walking or sitting restrictions recommended by Dr. Madhava.

While the Second Circuit has noted that "the opinions of consulting physicians . . . generally have less value than the opinions of treating physicians," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order), the opinions of a consulting source "may constitute substantial evidence if they are consistent with the record as a whole," *Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014) (quotation marks omitted), and can even "override treating physicians where the non-treating source's opinion is supported by evidence in the record," *Williams v. Colvin*, No. 15-cv-6719 (KMK) (PED), 2016 WL 11270671, at *11 (S.D.N.Y. Dec. 14, 2016) (citing *Schisler v. Sullivan*, 3 F.3d 563, 566-68 (2d Cir. 1993)), *adopted sub nom. Williams v. Comm'r of Soc. Sec.*, 2017 WL 4326119 (S.D.N.Y. Sept. 28, 2017). Accordingly, ALJ Suarez did not err in assigning greater weight to the opinions of the consultative examiners than she did to Dr. Madhava's opinion, since these consultative examiners' findings were more consistent with the evidence in the record as a whole, as described in detail herein.

\* \* \* \* \* \* \* \* \* \*

For all of these reasons, ALJ Suarez did not err in failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Madhava, with respect to Plaintiff's physical impairments because Dr. Madhava's opinion was both unsupported by, and inconsistent with, the treatment records of Plaintiff's other care providers and the opinions of the consultative examiners. *See Halloran*, 362 F.3d at 32 ("[T]he opinion of the treating physician is not

19

afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."). Even though ALJ Suarez procedurally erred in failing to explicitly address all of the *Burgess* factors, the "substance of the treating physician rule was not traversed," as the Court's searching review of the record, including all of the treatment records, opinion evidence, and testimonial evidence, demonstrated that there were good reasons for the ALJ to assign little weight to Dr. Madhava's opinion. *Estrella*, 925 F.3d at 96.

Moreover, the same evidence in the record that gave ALJ Suarez good reasons to assign little weight to the opinion of Plaintiff's treating physician constitutes substantial evidence to support the ALJ's RFC determination regarding Plaintiff's physical impairments. Accordingly, there is no basis to remand this matter to the agency for further proceedings based on the portion of the ALJ's decision that addressed Plaintiff's physical capabilities.

## III.    The ALJ's Evaluation of Plaintiff's Mental Impairments

The portion of ALJ Suarez's decision that addressed Plaintiff's mental impairments, however, was defective, and remand is warranted for further administrative proceedings, but not solely for the calculation of benefits.

Although Plaintiff did not raise an express challenge to the sufficiency of the record, the Court must independently consider whether the ALJ failed to satisfy her duty to develop the record. *See Prieto v. Comm'r of Soc. Sec.*, No. 20-cv-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021). "Before determining whether the Commissioner's conclusions are supported by substantial evidence," a court "must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). Because "Social

Security proceedings are inquisitorial rather than adversarial," an ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). This duty includes the responsibility "to develop a complete medical record." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The ALJ's duty to develop the record is also heightened "when a claimant asserts a mental impairment." *Angelica P. v. Comm'r of Soc. Sec.*, No. 21-cv-9529 (GRJ), 2023 WL 2366913, at *4 (S.D.N.Y. Mar. 6, 2023) (quotation marks omitted). "Underpinning the heightening of the ALJ's duty is a recognition that the opinions of treating providers are particularly probative in claims involving mental health." *Id.* (citing *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018) (summary order)); *see Canales v. Comm'r of Soc. Sec.,* 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health."). "Whether the ALJ has met his [or her] duty to develop the record is a threshold question." *Angelica P.*, 2023 WL 2366913, at *6. "Remand is appropriate where this duty is not discharged." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 577 (S.D.N.Y. 2022); *see Moran*, 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

Here, the ALJ recognized that Plaintiff's bipolar disorder and affective disorder were severe impairments, AR 1361, and she added certain limitations to the RFC based on these impairments, including a restriction to simple and routine tasks, only occasional interaction with supervisors, coworkers, and the public, and no work requiring a specific production rate, AR 1370. Yet there is no indication that the ALJ attempted to obtain medical opinions from any

21

treating mental health providers.[10]  There is no doubt that the ALJ was aware of Plaintiff's treating mental health providers, including those who were actively treating her at or around the time of the October 8, 2024 hearing, because Plaintiff's attorney called those providers to the ALJ's attention in his opening remarks at that proceeding, *see* AR 1386-87, and treatment notes from those providers were part of the record, *see, e.g.,* AR 2423-44, 2519-33, 2840-53, 2890-94. But the medical records alone do not substitute for a treating physician opinion—"[m]edical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity." *Skartados v. Comm'r of Soc. Sec.*, No. 20-cv-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022); *Prieto*, 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

Courts in this District have held that an ALJ's failure to seek a functional assessment from a treating physician will not require remand if "the RFC determination is otherwise supported by the treating doctors' or a consultative examiner's clinical findings, and the ALJ has a complete record from the treating doctors." *Romero v. Comm'r of Soc. Sec.*, No. 18-cv-10248 (KHP), 2020 WL 3412936, at *14 (S.D.N.Y. June 22, 2020).  But the opinion evidence in the record as to Plaintiff's mental limitations from the four consultative examinations is not consistent, "thus making all the more important that the ALJ seek the input of treating providers." *Angelica P.*, 2023 WL 2366913, at *5.

And furthermore, even in the absence of mental health treating source opinions, the ALJ rejected the most significant findings of the consultative examiners who provided medical

---

[10] Technically, there is a treating source opinion regarding Plaintiff's mental capabilities—a mental capacity assessment from Dr. Madhava, issued on January 3, 2018.  AR 1077-80.  But Dr. Madhava is an internal medicine physician, not a mental health professional, and the ALJ accorded the opinion little weight because it "generally understate[d] [Plaintiff's] work-related mental restrictions.  AR 1369.

opinions as to Plaintiff's mental functioning, concluding that they "overstate[d] [Plaintiff's] limitations" in various areas of functioning. AR 1369. In particular, Dr. King-Toler, who evaluated Plaintiff on November 3, 2018, concluded that Plaintiff had marked limitations in interacting with coworkers and the public; sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being. AR 1094-95. Other consultative examiners assessed moderate, or moderate-to-marked, limitations in these and other areas. *See* AR 1056, 2417. Dr. King-Toler concluded that the results of her examination "appear to be consistent with psychiatric problems and this may interfere with [Plaintiff's] ability to function on a daily basis." AR 1095; *see also* AR 2417 (Dr. Forsyth concluded that the results of her examination "appear to be consistent with psychiatric problems and this may significantly interfere with [Plaintiff's] ability to function on a daily basis").

"'Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified.'" *Anjelica P.*, 2023 WL 2366913, at *6 (quoting *Piscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016)). Accordingly, this matter should be remanded for further development of the record.

## IV.    The Appropriate Remedy

The Second Circuit has held that remand solely for the calculation of benefits is appropriate "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). That is not the case here, where ALJ Suarez's error was in failing to develop the record

to be able to sufficiently assess Plaintiff's mental functioning limitations. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) ("Where there are gaps in the administrative record . . . we have, on numerous occasions, remanded to the Commissioner for further development of the evidence." (cleaned up)); *Shackleford v. Saul*, No. 19-cv-01278 (TOF), 2020 WL 3888037, at *2 (D. Conn. July 10, 2020) ("Remand for calculation of benefits is not appropriate when the record requires further development."). While there have been significant delays in the adjudication of Plaintiff's claim, including multiple remands and administrative hearings before different ALJs, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). The Court is not able to make that determination on its own here. Accordingly, a remand solely for benefits is not warranted by the delays in this case.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion (ECF No. 11) be GRANTED, that judgment be entered in favor of Plaintiff, and that the case be remanded for further administrative proceedings pursuant to sentence four of Section 405(g), and not solely for the calculation of benefits.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(l) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have 14 days from the date of service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, must be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kenneth M. Karas, United States

24

District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Karas, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 782 F.3d 93, 102 (2d Cir. 2015).

Dated: March 13, 2026
White Plains, New York

Respectfully submitted,

ANDREW E. KRAUSE
United States Magistrate Judge

25